# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Manjinder S. Tiwanna, Deceased, by Balwinder Kaur, Dependent, Petitioner | : : : : | **CASES CONSOLIDATED** |
| v. | : : | |
| Jatt Friends, Inc., Kaolin Mushroom Farms, Inc., Uninsured Employers Guaranty Fund, and USA Freight, Inc. (Workers' Compensation Appeal Board), Respondents | : : : : : | No. 852 C.D. 2021 |

| | | |
|---|---|---|
| Manjinder S. Tiwanna, Deceased, by Balwinder Kaur, Dependent, Petitioner | : : : : | |
| v. | : : | |
| Race, Inc., Kaolin Mushroom Farms, Inc., Uninsured Employers Guaranty Fund, and USA Freight, Inc. (Workers' Compensation Appeal Board), Respondents | : : : : : | No. 853 C.D. 2021 Submitted: August 5, 2022 |

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                  FILED: December 1, 2022

Balwinder Kaur (Claimant), an adult dependent of Manjinder Tiwanna (Decedent), petitions for review of the Workers' Compensation Appeal Board's (Board) June 30, 2021 Order that affirmed a Workers' Compensation Judge's (WCJ) September 21, 2020 Decision denying Claimant's claim petitions against Jatt Friends, Inc. (Jatt), Race, Inc. (Race), Kaolin Mushroom Farms, Inc. (Kaolin), USA Freight, Inc. (USA Freight) (collectively, Alleged Employers), and the Uninsured Employers Guarantee Fund (UEGF). On appeal, Claimant argues the Board erred in determining Decedent was an independent contractor and not an employee of one of the Alleged Employers. Upon review, we affirm.

## I.     Background

Before June 1, 2018, Decedent was driving a tractor trailer pursuant to an independent contractor agreement with Jatt. Certified Record (C.R.), Item No. 11, Findings of Fact (F.F.) Nos. 11i, 16b, 17. Decedent signed a notice of termination, with an effective date of May 31, 2018, which indicated that he was "voluntarily terminating his contract for driving with Jatt . . . ." F.F. No. 17. On June 1, 2018, Decedent signed an Independent Contractor Agreement with Race, wherein Race agreed to obtain delivery jobs for Decedent, Decedent agreed to pay Race a dispatch fee, and Decedent agreed to lease a tractor trailer from Race. F.F. Nos. 14, 15, 21e. The agreement also specified "[i]t is expressly agreed that [Decedent] shall always be acting as an independent contractor during the performance of any services under the Agreement. This Agreement does not constitute, and shall under no circumstances be construed as constituting, or creating, an employer/employee relationship between [Race] and [Decedent]." F.F. No. 21f.

2

Decedent died on June 5, 2018, due to injuries he sustained from a tractor trailer accident. F.F. No. 10. At the time of his death, Decedent was transporting a load of mushrooms, which Kaolin subcontracted to Race. *See* F.F. No. 23. Claimant filed Fatal Claim Petitions for Compensation by Dependents of Deceased Employees (Fatal Claim Petitions) against Jatt and Race. F.F. Nos. 1-2. In her Fatal Claim Petitions, Claimant alleged that she was living with and totally dependent upon her son, Decedent, who was injured while employed by Jatt and Race. *See e.g.* C.R., Item No. 2. Shortly after filing the Fatal Claim Petitions, Claimant filed claim petitions for benefits from UEGF against Jatt and Race. UEGF then filed joinder petitions, seeking to add Kaolin and USA Freight[1] as additional employers. F.F. No. 6; C.R., Item No. 15, at 1.

The WCJ held a series of hearings in this matter, wherein Claimant and representatives of Jatt, Race, Kaolin, USA Freight, and UEGF testified. *See* F.F. Nos. 8, 11, 12, 13, 14, 15, 16, 22, 23. Claimant asserted Decedent was an employee of Jatt and Race, while Alleged Employers all denied that Decedent was their employee. *Id.* Representatives of Jatt and Race specifically asserted Decedent was operating as an independent contractor at the time of his death. *Id.* Due to Race and Jatt's failure to timely file an answer to Claimant's Fatal Claim Petitions, the WCJ deemed the factual allegations in those petitions admitted.[2] F.F. No. 37.

---

[1] USA Freight is a party to this action because the "Drop Sheet for the [Kaolin] job on June 2, 2018 . . . [had] the name of [USA Freight] on it because [Race] wasn't set up in [Kaolin]'s computer system as a common carrier by June 2, 2018." F.F. No. 23e. Claimant did not, however, assert that USA Freight was Decedent's employer at the time of Decedent's death. *See generally* C.R., Item No. 11.

[2] The WCJ deemed the following facts admitted:
      a.) The business of the Defendants was trucking.
      b.) The time of the injury was 11:24 p.m.
**(Footnote continued on next page…)**

After summarizing the testimony of each witness, the WCJ issued the following findings:

> Ms. Dhaliwal[, who operated Jatt,] and Mr. Sekhon[, who operated Race,] are credible and persuasive, particularly with respect to the existence of the independent contractor agreements between [Race] and [Decedent]. [sic] because their testimonies are corroborated by Mss. Lindsey[, who notarized a June 1, 2018 Independent Contractor Agreement between Race and Decedent,] and Lynch[, who witnessed Decedent execute the Independent Contractor Agreement,] and the documents in evidence. Mss. Lynch and Dhaliwal and Mr. Sekhon are credible and persuasive about [Decedent]'s status as an independent contractor at the time of the injury and his demise because: the independent contractor agreements with [Decedent]'s notarized signature on it [sic] substantiate his status as an independent contractor, statements in the Pennsylvania Income Tax Return for 2017 buttressed

c.) The cause of death was brain death [as declared] by USA Medical Center Staff.

d.) The deceased incurred medical bills from USA Medical Center and from Med-Trans in the amount of $37,164.25.

e.) The expenses for the burial were $10,128.38.

f.) The paid amount from the Defendants was $0.

g.) The wages of the deceased at the time of the accident were $850.00.

h.) The notice of injury and/or death was orally given to the Defendants on 6/5/18 by Sandeep Kaur to Amrit Dhaliwal and Harbinder Dhaliwal.

i.) The dependent was Balwinder Kaur . . . as the mother[,] and the dependency was total.

j.) The petitioner lived with the deceased at the time of death and wasn't a widow of the deceased.

k.) There wasn't other pending litigation.

F.F. No. 37.

The WCJ properly deemed only factual allegations, and not the employment relationship, admitted in response to Claimant's *Yellow Freight* Motion. *See Yellow Freight Sys., Inc. v. Workmen's Comp. Appeal Bd. (Madara)*, 423 A.2d 1125 (Pa. Cmwlth. 1981) (holding that when a defendant fails to file an answer to a claim petition within the statutory answering period, the WCJ must deem the factual allegations within the claim petition as having been admitted); *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs.)*, 159 A.3d 61, 72 (Pa. Cmwlth. 2017) (explaining that the employment relationship "is a question of law" and that "[c]onclusions of law are not deemed admitted by a late answer to the claim petition").

[Decedent]'s self-employment and the lack of his dependents, and statements in a Department of the Treasury Internal Revenue Service Form 1040 U.S. Individual Income Tax Return 2017 for Decedent showed deductions for a self-employment tax, indications of self-employment, and the lack of his dependents. Ms. Dhaliwal and Mr. Sekhon are credible and persuasive about [Decedent]'s status as an independent contractor because their testimonies and the evidence as a whole established that the terms of the agreements between [Decedent] and [Race] weren't indicative of an employer-employee relationship at the time of the accident and subsequent demise, that they didn't control the manner of [Decedent]'s performance of delivery with the exception of the specified load pick up and delivery points and times for the aforesaid, that [Decedent] was only responsible for the results, that [Decedent]'s payments were by the load, job, mile, or percentage of the transported load less a dispatch amount, that they didn't train [Decedent] for the operation of the tractor-trailer, that there wasn't a continuing relationship between the Defendants and [Decedent] with work at frequently or recurring intervals, that there were no set hours of work for [Decedent], that [Decedent]'s work wasn't performed on [Race]'s premises, that [Decedent] could and did turn down loads, that [Decedent]'s performance of services in an order or sequence and in accordance with [Race]'s specifications wasn't required with the exception of the load pick up and delivery points and times for the aforesaid at the time of the accident and subsequent demise, and that there were no payments to [Decedent] by the hour, week, or month.

F.F. No. 35. Accordingly, the WCJ determined that Claimant did not sustain her burden of proving that Decedent's death was caused by an injury he sustained during his employment with one of Alleged Employers. C.R., Item No. 11, Conclusions of Law No. 4. Therefore, the WCJ denied Claimant's Fatal Claim Petitions. *See* C.R., Item No. 11.

Claimant appealed to the Board which affirmed the WCJ's decision. The Board determined the WCJ's factual findings were supported by substantial evidence, and the WCJ did not commit an error of law in determining that Decedent was an independent contractor at the time of his death. Claimant timely appealed to this Court.

## II.     Analysis

On appeal, Claimant argues the Board's decision should be reversed because the WCJ's factual findings related to Decedent's employment status were not supported by substantial evidence and the WCJ and the Board committed an error of law in concluding that Decedent was an independent contractor.[3]  In support of this argument, Claimant asserts the WCJ found the testimony of Kaolin's transportation manager to be "credible and persuasive," a portion of which the WCJ summarized as follows:

> [Kaolin] doesn't allow double-brokering, specifically an entity, like [Race], to hire another person or entity to deliver [Kaolin]'s load.  That prohibition [] is in the contract between [Kaolin] and common carriers, like [Jatt] and [Race] and the common carrier's assignment of a job to

---

[3]  In the "statement of questions involved" section of Claimant's brief, Claimant only identified one question, as follows: "[w]hether the WCJ and [Board] should be reversed because they ignored substantial evidence proving that Decedent could not be an independent contractor because [Kaolin] brokered the job to [Race], [Kaolin] would not permit [Race] to give the load to Decedent, and [Race] knew of this prohibition?"  Although this question does not directly allege any errors of law, the determination of an employer/employee relationship is a question of law, so we will consider Claimant's argument as also challenging the WCJ and the Board's legal conclusion that Claimant was an independent contractor at the time of his death.  *See Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 563 A.2d 328, 330-31 (Pa. 2000) (employment relationship is a question of law); Pa.R.A.P. 2116(a) (questions may be considered if they are fairly suggested by the statement of questions involved).

In the Argument section of Claimant's brief, Claimant presents arguments that the Board committed errors of law by not concluding that (a) Kaolin was a statutory employer of Decedent, (b) Decedent was an employee because he never fulfilled any of the requirements of his independent contractor agreement, and (c) the WCJ should have granted Claimant's *Yellow Freight* Motion thereby deeming the employment relationship admitted.  *See* Petitioner's Brief, at 25-33.  These allegations of error have not been preserved for our review as they are not stated in or fairly suggested by Claimant's statement of the questions involved.  *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *In the Interest of T.W.*, 261 A.3d 409, 424 n. 9 (Pa. 2021) (question the appellant did not raise in the statement of questions involved section of its brief was not preserved for appellate review).

a different entity or individual would void the contact between the common carrier, like [Jatt] and [Race], and [Kaolin]. Mr. Sekhon[, who operated Race,] had full knowledge of the aforesaid.

F.F. Nos. 23k, 36. The WCJ also noted that Kaolin's transportation manager believed Decedent worked for Race. F.F. No. 23d. Claimant also asserts that the WCJ found the testimony of Race's operator to be credible, a portion of which the WCJ summarized as follows:

> If [Race] wanted someone else's delivery of a [Kaolin] load than [Race], [Kaolin] wouldn't have allowed that and [Kaolin] wouldn't have permitted [Decedent]'s delivery of the load on the date of the accident. [Decedent] couldn't do any work for [Kaolin] on his own in accordance with the terms of the Independent Owner/Contractor agreement [between Kaolin and Race].

F.F. Nos. 22h, 35.

Claimant argues the WCJ's and Board's findings that Claimant was an independent contractor are not reconcilable with the uncontradicted, credible testimony that Race did not have the authority to give a Kaolin delivery to an independent contractor. *See* Petitioner's Br. at 15-16. Thus, Claimant argues the WCJ's and the Board's findings were not supported by substantial evidence and the WCJ's and Board's resulting legal conclusion that Decedent was an independent contractor constitutes an error of law. *See id.* at 14-23.

In a workers' compensation appeal, we are "limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n. 2 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Waldameer Park, Inc. v. Workers'*

7

*Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted). "The WCJ is the ultimate factfinder and has exclusive province over questions of credibility and evidentiary weight." *Univ. of Pa. v. Workers' Comp. Appeal Bd. (Hicks)*, 16 A.3d 1225, 1229 n.8 (Pa. Cmwlth. 2011) (citation omitted).

A claimant's employment status is a "crucial threshold determination that must be made before granting workers' compensation benefits[,]" because "[a]n independent contractor is not entitled to benefits . . . ." *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 563 A.2d 328, 330 (Pa. 2000) (citations omitted). A workers' compensation claimant "bears the burden of proving all elements necessary for an award, including the existence of an employer-employee relationship." *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1162 (Pa. Cmwlth. 2016) (citing *Universal Am-Can*, 563 A.2d at 330). The "determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case." *Universal Am-Can*, 563 A.2d at 330-31 (citation omitted).

Our Court recently set forth our considerations in determining a claimant's employment status as follows:

> "While no hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, certain guidelines have been established and certain factors are required to be taken into consideration...." *Hammermill Paper Co. v. Rust Eng'g Co.*, . . . 243 A.2d 389, 392 ([Pa.] 1968). Courts consider many factors including:
>
> > (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the

8

job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

*Am. Rd. Lines v. Workers' Comp. Appeal Bd. (Royal)*, 39 A.3d 603, 611 (Pa. Cmwlth. 2012); *accord Hammermill*.

Although no one factor is dispositive, control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status. *Universal Am–Can*; *Am. Rd. Lines*. Control exists where the alleged employer: "possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee." *Am. Rd. Lines*, 39 A.3d at 611 (citing *3D Trucking v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281 (Pa. Cmwlth. 2007)).

Moreover, payment of wages and payroll deductions are significant factors, as is provision of workers' compensation coverage. *Id.*; *Martin Trucking Co. v. Workmen's Comp. Appeal Bd. (Andrushenko & Clark Searfoss)*, . . . 373 A.2d 1168 ([Pa. Cmwlth.] 1977). However, payment is not determinative. *Am. Rd. Lines*; *see Martin*. In addition, a tax filing denoting self-employment, while a relevant factor, is not dispositive on the issue. *See Guthrie v. Workers' Comp. Appeal Bd. (The Travelers' Club, Inc.)*, 854 A.2d 653 (Pa. Cmwlth. 2004). Similarly, the existence of an employment or independent contractor agreement is another factor to consider, but it is not, by itself, dispositive. *Hammermill*.

*Edwards*, 134 A.3d at 1162-63.

Contrary to Claimant's assertion, neither Kaolin's contract with Race, nor Kaolin's transportation manager's belief that Decedent was an employee of Race, conclusively establishes that Decedent was an employee of Race. Although Race would be violating its contract with Kaolin by having Decedent transport Kaolin's load as an independent contractor, this does not preclude a finding that Decedent was acting as an independent contractor. Nor does Kaolin's transportation manager's belief that Decedent was Race's employee. Instead, these were merely

factors in determining whether Decedent was Race's employee. *Am. Rd. Lines*, 39 A.3d at 611.

The WCJ extensively analyzed and weighed the testimony and documentary evidence in this matter. *See generally* C.R., Item No. 11. Each of the WCJ's factual findings were supported by testimony or documentary evidence that the WCJ found to be credible. *Id.* The evidence the WCJ relied on was sufficient that a reasonable person would accept it as adequate to support the WCJ's factual findings. *See Waldameer Park*, 819 A.2d at 168. Accordingly, we conclude that the WCJ's factual findings related to Decedent's employment relationships are supported by substantial evidence. The Board, which is bound by our same standard of review, did not err in reaching the same conclusion.

In analyzing the WCJ's legal conclusion that Decedent was an independent contractor at the time of his death, the Board, after quoting the WCJ's factual finding No. 35 (which we have also quoted above), determined

> [t]hese credibility determinations and factors laid out by the WCJ clearly establish both alleged employers lacked control over Decedent's work. *Universal Am-Can*. In addition, they take into consideration other established factors to show Decedent was an independent contractor. Specifically, Decedent was responsible for results only, the terms of agreement between the parties established an independent contractor relationship, the nature of the work was a skilled truck driver occupation, Decedent supplied the tools, and payment was done by the job. Given these factors, including the main control factor, we determine the WCJ did not err in concluding that Decedent was an independent contractor.

C.R., Item No. 15, at 9. We agree with the Board's determination.

### III. Conclusion

For the reasons set forth above, we conclude the Board did not err in determining the WCJ's findings of fact were supported by substantial evidence and

10

that the WCJ did not commit an error of law when it determined Decedent was an independent contractor at the time of his death. Therefore, we affirm the Board's order.

_____
STACY WALLACE, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Manjinder S. Tiwanna, Deceased, | : | **CASES CONSOLIDATED** |
| by Balwinder Kaur, Dependent, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Jatt Friends, Inc., Kaolin Mushroom | : | |
| Farms, Inc., Uninsured Employers | : | |
| Guaranty Fund, and USA Freight, Inc. | : | |
| (Workers' Compensation Appeal Board), | : | |
| Respondents | : | No.  852 C.D. 2021 |

| | | |
|---|---|---|
| Manjinder S. Tiwanna, Deceased, | : | |
| by Balwinder Kaur, Dependent, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Race, Inc., Kaolin Mushroom | : | |
| Farms, Inc., Uninsured Employers | : | |
| Guaranty Fund, and USA Freight, Inc. | : | No. 853 C.D. 2021 |
| (Workers' Compensation | : | |
| Appeal Board), | : | |
| Respondents | : | |

# **O R D E R**

   **AND NOW**, this 1st day of December, 2022, the Order of the Workers'
Compensation Appeal Board, dated June 30, 2021, is **AFFIRMED.**

_____
STACY WALLACE, Judge